# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JEFFREY BRISEBOIS,**

    **Plaintiff,**

v.                                                  Case No: 6:16-cv-1589-Orl-31GJK

**UNITED STATES OF AMERICA,**

    **Defendant.**

## MEMORANDUM OPINION

Plaintiff Jeffrey Brisebois ("Brisebois") brings this action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675, *et seq.* A bench trial was held June 12 through 14, 2018. A transcript of the trial has been filed,[1] and the parties filed post-trial memoranda (Doc. Nos. 69 and 70).

I.     The Facts[2]

Around noon on October 28, 2013, Brian Turner ("Turner"), an assistant letter carrier, was driving a U.S. Postal Service Grumman Long-Life Vehicle ("LLV") westbound on New Hampshire Street in Edgewood, Florida.[3] New Hampshire Street is a two-lane road running east and west. It forms a "T" intersection with U.S. Highway 1, also known as "Ridgewood." At this

---

[1] The transcript was filed in three volumes: Day 1 (Doc. 62), Day 2 (Doc. 64), and Day 3 (Doc. 67). Reference to the transcript herein will be by volume number, followed by page number.

[2] These facts are largely uncontested.

[3] Defendant concedes that Turner was acting within the course and scope of his employment with the U.S. Postal Service.

intersection with Ridgewood, New Hampshire is controlled by a stop sign and stop line. Only a right turn is allowed. At this same time, Brisbois was riding his bicycle southbound on the sidewalk on the eastern side of Ridgewood against the northbound flow of traffic.[4]

As he approached the intersection, Turner stopped his LLV at the stop line on New Hampshire Street. (Tr. Vol. 1, p. 123-124).[5] He looked to his left, to his right, and then again to his left. His vision to the left was obstructed by a building on the southeast corner of the intersection, so in order to see oncoming northbound traffic, he pulled forward approximately twelve feet before initiating his right-hand turn onto Ridgewood.[6] Seeing a gap in northbound traffic, Turner continued his right-hand turn without looking again in that direction and collided with Plaintiff's bicycle almost immediately.[7] (*Id.*, p. 125). Turner never saw Brisebois before the collision. (*Id.*, p. 120). After the impact, the LLV moved a very short distance,[8] and Plaintiff remained upright on his bicycle.

Plaintiff testified that he first saw the moving LLV when he was about 20 to 30 feet from the intersection. However, he did not attempt to stop his bicycle. Instead, he swerved to the

---

[4] Defendant posits that Brisebois may have been riding on the shoulder of Ridgewood, but the Court credits Brisebois's testimony that he was riding on the sidewalk.

[5] Brisebois claims that the LLV did not stop at the stop bar, but the greater weight of the evidence supports Turner's testimony in this regard.

[6] Ridgewood (US 1) is a heavily traveled four-lane divided highway with a 45 mile per hour speed limit. In order to see oncoming northbound traffic, Turner had to pull forward about 12 feet west of the stop line. (Tr. Vol. 3, p. 137).

[7] Impact with Plaintiff's bicycle occurred on the left front of the LLV and caused a side mirror to break loose.

[8] Turner estimated the distance to be five feet or less. (Tr. Vol. 1, p. 135). Plaintiff described it as an inch. (Tr. Vol. 3, p. 37). Defendant's expert witness calculated the distance at two feet. (Tr. Vol. 3, p. 73).

right and attempted to pass in front of the LLV, thinking it would stop. (Tr. Vol. 3, p. 35-37). It didn't, and he collided with it.

II. The Law

In an FTCA case, the Court applies the law of the place where the accident occurred. 28 U.S.C. § 1346(b)(1). Thus, Florida law provides the rule of decision here. Under Florida law, each party to this case was required to exercise due care under the circumstances.[9] Florida Statute § 316.123(2)(a) required Turner to come to a complete stop at the stop line before proceeding to make his right-hand turn. Turner complied with this requirement. Florida Statute § 316.2065(9) imposes the same duties on a bicyclist as those imposed upon pedestrians, and Florida Statute § 316.130(8) provides that "no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield." As discussed below, Plaintiff violated this provision.

III. The Expert Testimony

Defendant called Dr. Justin Morgan as an expert witness in accident reconstruction.[10] Using his report as a demonstrative guide, Dr. Morgan explained how he calculated the movement of the two vehicles as they approached the point of collision and final rest.[11] Except for an alleged scaling error, Dr. Morgan's testimony was largely unrebutted.[12]

---

[9] Florida Statue § 316.1925 requires that anyone operating a vehicle on Florida roads must do so in a "careful and prudent manner," while Florida Statute § 316.2065(1) provides that, generally, bicyclists have the same duties as drivers of other vehicles.

[10] Plaintiff did not object to Dr. Morgan's qualification to testify as an expert witness in the field of human factors and accident reconstruction. (Tr. Vol. 3, p. 60).

[11] Portions of Morgan's report were displayed on Court Exhibit 2 ("CX2"), which appears in the docket as Doc. 60-2.

[12] The scaling error can be seen on page 18 of CX2, which shows the LLV located behind the stop bar at a point in time when it should have been pulled up to the stop bar. (Doc. 60-2, p.

Dr. Morgan reconstructed the accident by starting with the known final resting point of the vehicles after impact[13] and then working backwards using other evidence and reasonable assumptions as to vehicle speeds and distance traveled.[14]

Using visual evidence, Dr. Morgan concluded that with the front of the LLV at the stop line, and the driver's eyes 7 feet behind that, Turner had an unobstructed view of 74.6 feet down the sidewalk. (Tr. Vol. 3, p. 67). Assuming that Plaintiff was riding his bicycle at 10 miles per hour (a reasonable assumption), Dr. Morgan estimated that when the LLV began to accelerate from the stop line, Plaintiff would have been approximately 78 feet away from the intersection, outside of Turner's view.[15] (Tr. Vol. 3, p. 75).

From the stop line, Dr. Morgan assumed that the LLV accelerated to a speed of 5 miles per hour and maintained that speed until impact, traveling a total of 32.6 feet in 5.9 seconds. (Doc. 60-2, p. 16). After the LLV had accelerated to 5 miles per hour, Plaintiff would have been 33.4 feet away. (Tr. Vol. 3, p. 75). At 10 miles per hour, after application of the brakes, the bike could be stopped in .9 seconds. With a perception-reaction time of 1 second, the bike would thus come to a stop in 1.9 seconds, covering a distance of 21.3 feet. (Tr. Vol. 3, p. 84). As depicted in CX2, at 2 seconds before impact, Plaintiff was 29 feet away. (Doc. 60-2, p. 21). Consistent with Plaintiff's testimony that he was 20 to 30 feet away when he saw the LLV, he had time to

---

18). This representation, however, does not affect the validity of Dr. Morgan's calculations.

[13] The final resting point is clearly depicted at CX2, showing the LLV in the northbound lane of Ridgewood. (Doc. 60-2, p. 12-14).

[14] The sequence of the moving vehicles is depicted at pages 18-24 of CX2. (Doc. 60-2, p. 18-24).

[15] The vision here is bidirectional, so Plaintiff should have been able to see the LLV from 74.6 feet away, 5 seconds before impact. (Doc. 60-2, p. 18)

stop, or at the very least, brake and go behind the LLV.[16]  Instead, he elected to leave the sidewalk (a place of safety), enter the highway, and turn in front of a moving mail truck.  (Tr. Vol. 3, p. 80).[17]

IV.  Conclusion

This accident was not Turner's fault and no amount of negligence will be attributed to Defendant.  The Court will enter judgment for the Defendant.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 31, 2018.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[16] Plaintiff should have been able to see the LLV at least 3 seconds before impact, when he was 44 feet away.  (Doc. 60-2, p. 20).

[17] Plaintiff testified that when he first saw the LLV, it was moving forward, but he thought it would stop at the stop sign.  However, the objective evidence shows that when Plaintiff saw the LLV, it had already stopped at the stop line and was in the process of making the right-hand turn onto Ridgewood.